

**STINSON
LEONARD
STREET**

Nicholas Zluticky
816.691.3278 **DIRECT**
816.412.9388 **DIRECT FAX**
nicholas.zluticky@stinson.com

June 2, 2017

**Via electronic mail**

Norman Rouse, Chapter 11 Trustee
Collins, Webster & Rouse, P.C.
5957 E 20th St
Joplin, MO 64801
nrouse@cwrcave.com

Re:   In re Grisham Farms Transportation, LLC, Case No. 16-61263 and In re Grisham Farm Products, Inc., Case No. 16-61149(collectively, the "Bankruptcy Cases"), currently pending in the United States Bankruptcy Court for the Western District of Missouri (the "Bankruptcy Court")

Dear Norman:

Thank you for selecting Stinson Leonard Street (the "Firm") to represent you in your capacity as chapter 11 trustee (the "Trustee") for the bankruptcy estates of Grisham Farms Transportation, LLC and Grisham Farm Products, Inc. (collectively, the "Debtors") in connection with the above-referenced Bankruptcy Cases. We appreciate the confidence that you have placed in us and look forward to serving as counsel in this engagement.

We are submitting this letter and the accompanying General Terms of Representation to serve as the written agreement for our engagement. This letter and the General Terms of Representation contain important information regarding how we provide legal services and will apply, unless otherwise agreed in writing, to our representation of the Trustee in the Bankruptcy Cases. If you have any questions about any part of our engagement or if you would like to discuss possible modifications to the terms of this engagement, please call me.

### Client

For purposes of this engagement, the Firm's sole client will be the Trustee. Except as otherwise agreed in writing, the Firm will not be representing any other person or entity in the Bankruptcy Cases, including the Debtors.

### Scope of Engagement

Unless otherwise specifically agreed in writing, the scope of this engagement will be limited to the provision of legal services for the Trustee in administering the bankruptcy estates of the Debtors, including but not limited to any liquidation of the Debtors' assets (the "Matter"). Our acceptance of this engagement does not involve an undertaking to represent the Trustee in any other matter. All aspects of the engagement will be subject to approval of the Bankruptcy Court.

Norman Rouse, Chapter 11 Trustee
June 2, 2017
Page 2

## Fees and Charges

Subject to the approval of the Bankruptcy Court, our fees for this engagement will be based upon and billed at the hourly rates of each attorney, paralegal, and other timekeeper performing services on your behalf. The current hourly rates for attorneys and paralegals anticipated to work on the matter are as follows:

| Attorney/Paralegal | Hourly Rate |
|---|---|
| Paul Hoffmann, Partner | $595.00 |
| Nicholas J. Zluticky, Partner | $325.00 |
| Associates | $230.00 - $275.00 |

Our hourly rates are adjusted periodically, typically on an annual basis, to reflect the advancing experience, capabilities, and seniority of our attorneys and paralegals as well as general economic factors. From time to time, it may become necessary or desirable to assign different or additional attorneys or paralegals to work on the matter. Subject to the approval of the Bankruptcy Court, you agree that we may charge the hourly rates currently in effect at the time the work is performed. In addition, we will bill for disbursements or expenses that we incur, including delivery charges, photocopy or reproduction costs, computerized legal research charges, filing fees, fees and costs associated with practice support and/or electronic discovery providers, travel expenses, expert witness fees, and other vendor fees, if any.

Since we are not receiving any retainer and adequate cash to pay our fees and expenses is unclear at this time, it is necessary that we reserve the right to withdraw as counsel in this matter if our statements are not timely paid. If we end up withdrawing, we will ensure that your confidential information is protected as required by the applicable rules governing our professional responsibilities.

## Conflicts of Interest

As we have discussed, our Firm represents many other companies and individuals as counsel. In connection with the current engagement, we have completed an initial conflicts check and advised you that we represent the following alleged secured creditors in matters not substantially related to this engagement: CNH Industrial Capital America, FCS Financial, John Deere Credit, and Wells Fargo Equipment Finance ("Other Clients"). We will not represent the Other Clients in the Bankruptcy Cases. But the Other Clients may be adverse or become adverse to the Trustee in connection with this engagement. We do not believe that our firm's representation of the Other Clients on unrelated matters will affect our ability to provide competent and diligent representation to you in the Matter.

Accordingly, it is agreed that any conflict of interest presented by these facts is waived, to allow us to also represent the Other Clients in connection with such unrelated matters while representing you in connection with this engagement. You also agree not to provide our Firm with any confidential information concerning the matters upon which we represent the Other Clients or contend that such information has been provided so as to preclude our Firm from representing the Other Clients in any matter not substantially related to this engagement.

Norman Rouse, Chapter 11 Trustee
June 2, 2017
Page 3

Finally, in the event that a conflict of interest arises in the future that we believe cannot be satisfied by the waiver provided in this letter consistent with our professional responsibilities, and we must withdraw from this engagement, we may continue to represent the Other Clients in matter(s) not substantially related to this engagement. Of course, in any event, we will comply with our professional responsibilities, including those concerning the handling of confidential information.

We also note the following. First, we have not run a conflicts check on any unsecured creditors or other parties at this point. Instead, as we determine specific adverse parties, we will conduct supplemental conflicts checks and advise you of any conflicts. In addition, we note that our Firm previously represented Bank of Mansfield f/k/a Homepride Bank in Thomason et al v. Thomason Brothers et al, Case No. 12-WR-CC00084 in the Wright County Circuit Court in which Grisham Farm Products, Inc. was a co-party, but not a client (the "Prior Matter"). Our representation in the Prior Matter ended over a year ago, appears to be substantially unrelated to the Matter, and Bank of Mansfield f/k/a Homepride Bank is not a current client of our Firm. However, our Firm will not be able to represent you in any portion of the Matter that is substantially related to the Prior Matter, including but not limited to any investigation into the Prior Matter.

### Review and Return of Engagement Letter

We ask that you review this letter and the General Terms of Representation carefully and let us know if there is any provision that you do not understand. If you have any questions concerning the terms of our engagement, or if you ever have a question about our charges, or their reasonableness, please contact me at your convenience to discuss the matter.

Thank you for choosing us as counsel. We look forward to a good and productive relationship.

Sincerely,

Stinson Leonard Street LLP

Nicholas Zluticky

NZ:SLS

DB04/J13038175.1

Norman Rouse, Chapter 11 Trustee
June 2, 2017
Page 4


ACCEPTED AND AGREED
this __6__ day of __June__, 20_17_

**CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES OF
GRISHAM FARMS TRANSPORTATION, LLC AND GRISHAM FARM PRODUCTS, INC.**

By: _____

Name: Norman Rouse
Title: Trustee



**STINSON
LEONARD
STREET**

## GENERAL TERMS OF REPRESENTATION

Stinson Leonard Street LLP appreciates the opportunity to serve you. Our goal is to provide legal services that address your legal needs effectively and efficiently through our offices in Kansas City, Minneapolis, St. Louis, Phoenix, Denver, Washington, D.C., Omaha, Wichita, Mankato, Overland Park, Jefferson City, St. Cloud, Bismarck, and Decatur.

The following information explains the client service practices and billing procedures that apply to our representation of your interests (unless you have reached a different written understanding with us). We encourage you to discuss these practices with our lawyers whenever you have questions during the course of our engagement.

Our Client. The person(s) or entity(ies) who are the client(s) in this engagement are limited to those specifically stated in the accompanying engagement letter. In order to avoid misunderstandings and/or inadvertent conflicts of interest in the future, it is understood that, in the absence of written agreement to the contrary, neither this engagement nor our work in connection with this engagement shall be understood or taken to create an attorney-client relationship with other, including related or affiliated (e.g., parent, subsidiary, shareholder, partner, member, director, officer, employee, insurer, joint venture, etc.), persons or entities.

Personnel. One lawyer will generally be assigned primary responsibility for seeing that your requests for legal services are met, but additional lawyers may assist in providing appropriate and efficient legal services. We attempt to assign personnel to each matter based on the nature and scope of the issues raised by the matter in conjunction with the experience and expertise of our lawyers.

Provision of Legal Services. This engagement is for provision of professional legal services, and not for the provision of business, personal, accounting, technical or other advice not constituting legal services. It is agreed that the client is not relying upon counsel in this engagement for advice in areas other than professional legal services, even if such matters should be discussed in connection with the engagement.

Results. At the commencement or during the course of our representation, we may express opinions or beliefs concerning various issues or courses of action and the results that might be anticipated. Any such statement made by any partner or employee of our Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee.

Entire Agreement. The accompanying engagement letter together with these General Terms of Representation shall constitute the entire agreement between us concerning the engagement, and shall not be modified or supplemented, except in a subsequent writing signed by the parties.

Periodic Billings for Legal Services. Unless other arrangements have been made, it is our policy to render periodic statements for legal services on a monthly basis. We normally base these interim statements on hourly rates of lawyers and legal assistants working on the matter. Statements will be due upon presentation, and are to be paid no later than 30 days following the invoice date. The amounts paid on our interim billings are applied to the total final fee. If any statement amount remains unpaid 60 days after the invoice date, the Firm reserves the right to terminate its services, consistent with applicable Rules of Professional Conduct.

When agreed to by engagement letter, fees are sometimes fixed irrespective of the hours involved. Circumstances, including those set out below may require departure from the application of hourly rates. Determination of the total final fee may await conclusion of each specified case or matter so that all relevant factors may be considered.

The Firm has offices in multiple states. Our lawyers are subject to rules governing the professional conduct of lawyers in those states. In addition to time spent, these rules list other factors that can be considered in determining a reasonable fee. These include: reputation, the skill and experience required to complete the services properly; the extent to which the acceptance of the particular matter will preclude other employment; the amount involved; the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; and whether the fee is fixed or contingent. In the absence of agreement with you, those factors will not be used to increase our billings for fees above the charge resulting from application of hourly rates.

Estimates and Budgets. Please note that any estimates of anticipated fees and costs that we may provide at your request, whether for budgeting purposes or otherwise, are only an approximation because of the uncertainties involved in the representation. Unless we have otherwise agreed in writing to a specific fixed fee or fee cap, any such estimate is not a maximum or minimum fee quotation, and our fees will be determined based on actual hours incurred in accordance with the terms of our representation. It is also expressly understood that, absent a written contingent fee agreement, payment of the Firm's fees and costs is in no way contingent on the ultimate outcome of the matter.

Paralegals/Practice Support Consultants/Document Clerks. Certain work will be done by paralegals, sometimes called "legal assistants," and/or Practice Support Consultants. Such persons, although not practicing lawyers, have undergone training to perform certain kinds of services at lower rates. In matters involving significant quantities of document management, document clerks may be used to perform tasks at lower rates than those of legal assistants. In matters in which electronically stored information is relevant to the representation, Practice Support Consultants are used. All such work is supervised by practicing lawyers. The use of such persons allows us to deliver legal services to you at a lower cost.

Client Disbursements. Most matters require, from time to time, certain monetary advances to be made on your behalf by the Firm. Some "client disbursements" represent out-of-pocket charges we advance, others represent internal costs (including costs such as fees for service of process, court filing fees, deliveries, copying charges, travel expenses, computer assisted legal research, costs associated with electronically stored information that may be relevant to the representation, etc.). It is understood that while acting as your lawyers, we have the

authority to use our best judgment in making such expenditures on your behalf. Unless we have made prior arrangements with you, we will send you monthly billings for client disbursements incurred during the preceding month. If the nature of the matter is such that we anticipate substantial advances, we may require a separate deposit for such purpose. Substantial individual items in excess of $250, such as expert witness fees, the costs of deposition transcripts, printing costs, etc., may be billed directly to you by the vendor of such services. In many matters when lawyers must examine legal authorities, it is more economical to accomplish the task using computer databases of legal precedents (instead of the traditional method of manual retrieval). In such instances, the special charges assessed by the providers of these services, Lexis and Westlaw, are shown on client disbursement billings as "Lexis or Westlaw Research."

File Retention. After our representation has ended, we will, upon your request, deliver the file for this engagement to you. If you do not request the file, we will retain it for a period of five years after the matter is closed. If you do not request delivery of the file before the end of the five year period, we will have no further obligation to retain the file and may, at our discretion, destroy it without further notice to you, subject to governing rules of professional conduct. At any point during the five year period, you may request delivery of the file.

Disbursements and Other Charges. We will also charge you for certain expense items listed below that we provide in connection with our legal services. Through long-term contracts with computer research vendors, and practice support and/or electronic discovery providers, we receive discounted rates on some of these services in exchange for guaranteed payment, usage or other obligations undertaken at our risk. The payments that we receive from clients for these services may or may not exceed our total payments to the vendors. Any excess is used to partially offset the costs we incur for related equipment and personnel as well as the risks we assume in entering into these contracts.

Specific items provided by the Firm are currently charged at the following rates which may be changed periodically due to economic factors as reflected on the monthly invoice:

Photocopying. Clients are charged $0.20 per page for photocopying.

Computer Research. We do not charge clients for the use of the Firm's internal work product retrieval system. Clients are charged for computer-assisted research at rates we establish based on any agreement we have with the vendor and our associated risks in entering into long-term usage contracts.

Telecommunications. We do not charge for local or long-distance phone calls or electronic mail transmissions.

Mail/Messengers. Messengers are used as appropriate to assure expedited delivery. The cost of such messengers is charged directly to clients without markup. We do not charge for regular mail; however, bulk mailings, packages and special postal services are charged at our actual cost.

Travel. Unless other arrangements have been specified, any air travel required in connection with our representation of your interests will be at coach rates.

Electronic Communications. We may use various forms of electronic communications to discuss matters concerning your representation. Any such communication is not without some risk. For example, someone with sufficient knowledge, tools, and access could intercept and use information related to those communications. This could cause you to lose your confidentiality and attorney/client privilege protections. However, to facilitate your representation, you approve the use of electronic communications during your representation by us unless we are instructed otherwise.

Termination of Services. In the event that you choose to terminate our services, please advise us of such in writing. We retain the right to cease performing legal services and to terminate our legal representation for any reason consistent with ethical rules, including conflicts of interest or the failure to pay legal fees and expenses when due. Our termination or your termination of services does not affect your obligation to pay legal fees and expenses incurred prior to the effective date of such termination. Unless previously terminated, our representation of the Client will terminate upon our sending our final statement for services rendered. Unless we are re-engaged after our representation terminates, we will have no continuing obligation to advise the Client with respect to future legal developments or otherwise monitor renewal or notice dates or similar deadlines that may arise from the matter(s) for which we had been engaged.

Questions. One of our goals is to ensure that legal services are delivered effectively and efficiently, and that all billings are accurate and understandable. Please direct any questions about services or billing practices to the Chief Operating Officer. Questions regarding the billing or payment status of your account may also be directed to our Client Accounting Department.